MARGARET M. CURRAN vs. HENRY E. SULLIVAN,
administrator.

Essex.　November 1, 1948. — December 2, 1948.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract*, For personal service, Implied.

No express or implied promise by one to pay his wife's sister for house-
　work done by the sister in his household was shown by evidence that
　for many years, both before and after the wife's death, the sister lived
　in the household under an arrangement whereby she helped with the
　housework and paid a weekly sum in return for her room and board,
　and that there was also an arrangement among the three, reaffirmed
　by the husband and the sister after the wife's death, that upon the
　death of any one of them his or her property should go to the sur-
　vivor or survivors and that "the one that is last gets all."

Evidence that a woman living in the household of her sister and her
　sister's husband paid the rent thereof "to help out her sister" did
　not warrant a finding of an implied promise on the part of the husband
　to repay her therefor.

CONTRACT.　Writ in the Superior Court dated April 2,
1946.

The action was tried before *Sullivan*, J.

*W. E. Sisk & R. L. Sisk*, for the plaintiff, submitted a
brief.

*J. J. Foley*, (*A. J. Frawley* with him,) for the defendant.

SPALDING, J.　In this action of contract against the
administrator of the estate of Thomas F. Mahoney the
judge directed a verdict for the defendant, and the correct-
ness of this ruling presents the only question for decision.

The testimony of the plaintiff, which is the only evidence
material here, may be summarized as follows: The plaintiff
was a sister of Elizabeth Mahoney, who was the wife of
the defendant's intestate, hereinafter called Mahoney.
In 1915 the plaintiff, because of crowded conditions in
the home of her brother with whom she had been living,
came to live with the Mahoneys and continued to live
with them for the next thirty years.　The plaintiff and her

sister worked in a shoe factory. Mahoney was employed by the General Electric Company as a machinist until 1938, when he was retired on a pension. From 1915 to 1935 the plaintiff paid the Mahoneys $7 per week and helped with the housework in return for her board and room. She "intended to pay her way while living with her sister." After the death of Mrs. Mahoney in 1941 the weekly payments were increased to $9. In 1931 due to an injury Mrs. Mahoney was confined to the house for about a year and the plaintiff and another sister took care of her.

In 1935 the plaintiff and the Mahoneys had a conversation in the course of which Mahoney stated that if any one of them died his or her property would go to those who survived and "the one that is last gets all." The plaintiff said that this arrangement was satisfactory to her. Mahoney talked about making a will but his wife objected and no will was ever made. Thereafter this matter was discussed several times "and it was always the same arrangement."

Some time later as a result of a conversation with her sister the plaintiff, from 1935 to July 5, 1945, paid the rent of the tenement in which they lived "to help out her sister." The "weekly rent was $8 the first of it and $7 the last of it."

In 1939 Mrs. Mahoney was in a hospital for seven weeks and the plaintiff paid the bills. At that time the plaintiff talked with Mahoney about it and he said "it was all right, and that she would get the money back later."

Following the death of Mrs. Mahoney in 1941 "the management of the household continued the same as before her death." Shortly after her sister's death the plaintiff had a conversation with Mahoney in which he asked her what she intended to do and she replied that she did not know. She said in substance that "she wanted to remain . . . [there] as before." She then asked Mahoney what he wanted her to do and he replied, "I want you to remain just the same as your sister said to me. And the same promise will go, just the same as it did when Elizabeth was alive. That promise is still good. If you die ahead of me, I will have what is left; and if I die ahead of you, you will

have what is left." The plaintiff told Mahoney that that was satisfactory to her. At about this time Mahoney named the plaintiff as beneficiary on some insurance policies on his life from which on his death the plaintiff received $2,000. From 1941 to 1945 the plaintiff worked in a shoe factory in South Boston and would leave for work at seven o'clock and would return between five and six-fifteen.

About a year before Mahoney died he told the plaintiff that he was going "downtown" to have a will drawn and asked the plaintiff to accompany him. He said "I want to make a will so as to make everything all right. I want no trouble for you when I am passed away." But "the day was hot and they did not go." Mahoney died on July 5, 1945.

The judge rightly ordered a verdict for the defendant. The declaration, which is in four counts, need not be analyzed in detail. It is enough for present purposes to state that in various ways of declaring the plaintiff seeks to recover (1) for services in caring for Mahoney and his wife under an agreement in which Mahoney promised that she would be well paid, (2) for $3,644 for rent paid by the plaintiff for Mahoney at the latter's request, and (3) for hospital expenses paid by the plaintiff in 1939 for the care of Mrs. Mahoney.

The evidence fails to show that Mahoney ever entered into a contract express or implied to pay the plaintiff for services rendered to him or his wife. Down to 1941 there is no evidence that faintly resembles such an agreement. Throughout that period the plaintiff was living with the Mahoneys under an arrangement whereby she was to make weekly payments of $7 and to help out in the housework in return for her room and board. The conversation in 1935 in which it was agreed that whoever died first was to leave his or her property to the survivor or survivors cannot be treated as a contract to pay the plaintiff for services performed for Mahoney or his wife at Mahoney's request. It was in no way related to services. Nor does the conversation in 1941 between the plaintiff and Mahoney after the death of his wife amount to an agreement to pay the plain-

tiff for services. It amounted to no more than an agreement whereby the plaintiff could continue to live on in the Mahoney home just as she had previously done and that the "same promise . . . [would] go" as when her sister was alive, namely that whoever died first would leave his or her property to the survivor. This cannot be tortured into a promise by Mahoney to pay the plaintiff for services; it was not made in consideration of services to be performed by the plaintiff. By continuing to live in the Mahoney home on the same basis as before the plaintiff would presumably make the weekly payments and perform the customary household duties in return for her board and room. According to the evidence the plaintiff did these things and it does not appear that she did more. What was said concerning the disposition of property on the death of either was merely a reaffirmation of the 1935 agreement or arrangement. In short the plaintiff failed to show that she performed any services for Mahoney in reliance on a promise express or implied by him that they would be paid for. The cases cited by the plaintiff are obviously distinguishable and need not be discussed.

If we assume that the payments of rent from 1935 to 1945 were in addition to and not in lieu of the weekly payments for board, the evidence does not establish liability as against Mahoney's estate. According to the plaintiff's testimony this was done "to help out her sister." The evidence would not warrant a finding that the payments were made at Mahoney's request or in circumstances in which a promise on his part to repay them could be implied.

The payments of hospital bills by the plaintiff for the care of her sister were made in 1939. If we assume that there was an obligation on the part of Mahoney to repay this money because of his statement that "it was all right, and that she would get the money back later," the plaintiff could not prevail. Recovery would be barred by the statute of limitations, which was pleaded by the defendant. G. L. (Ter. Ed.) c. 260, § 2. There was no evidence introduced which would take the case out of the statute.

*Exceptions overruled.*